**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| LISA ANN RIEFFER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:19-CV-00214 JAR |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Lisa Rieffer's application for disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**Background**

Plaintiff applied for benefits under Titles II and XVI of the Social Security Act on August 1, 2016, alleging disability as of July 27, 2016 due to bipolar disorder, diabetes, neuropathy, anxiety, depression, migraines, scoliosis, and bursitis in both knees. Plaintiff testified she is unable to work because of symptoms caused by her back pain and mental impairments. (Tr. 110). After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on July 30, 2018, the ALJ issued a written decision on  November 30, 2018, denying Plaintiff's application. Plaintiff's request for

review by the Appeals Council was denied on September 23, 2019. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## I.  Facts

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 11-1) to the extent they are admitted by the Commissioner (Doc. No. 14-1). The Court also adopts Defendant's Additional Material Facts. (Id.). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## II.  Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

3

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained

4

work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### III. Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of obesity, degenerative disc disease/osteoarthritis of the lumbar spine, anxiety, and bipolar disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 55-56).

After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except that she should never climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and have no more than occasional exposure to unprotected heights. The ALJ further found that Plaintiff can perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions; few, if any workplace changes; and no work with an assembly line or conveyor belt. She should have also no more than occasional interaction with coworkers, supervisors, and the general public. (Tr. 58).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff is unable to perform any past relevant work (Tr. 63), but that, after considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as Mail Clerk: Dictionary of Occupational Titles (DOT) No. 209.687-026, SVP 2, light work, with approximately 53,501 jobs nationally; Photocopy Machine Operator: DOT No. 207.685-014, SVP 2, light work, with approximately 22,674 jobs nationally; and Garment Sorter: DOT No. 222.687-014, SVP 2, light work, with 28,000 jobs nationally. (Tr. 64). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 65).

**IV.   Discussion**

In her appeal of the ALJ's decision, Plaintiff challenges the RFC determination. She first argues that the ALJ failed to include all of her credible limitations in the RFC. In particular, Plaintiff takes issue with the ALJ's treatment of the opinion of Laurie Jibben, R.N., Plaintiff's primary care provider. (Doc. No. 11 at 2-9). Plaintiff also argues the ALJ failed to properly evaluate her subjective reports. (Id. at 9-14).

A claimant's RFC is the most she can still do despite her physical or mental limitations. Leckenby v. Astrue, 487 F.3d 626, 631 n. 5 (8th Cir. 2007). In formulating a claimant's RFC, the ALJ must consider all the relevant, credible record evidence, including a claimant's medical records, observations from treating and examining physicians, and a claimant's subjective statements. See Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007).

The Court will first consider the ALJ's subjective symptom evaluation, as the ALJ's evaluation of Plaintiff's credibility was essential to her determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

**A. Substantial evidence supports the ALJ's subjective symptom evaluation**

Plaintiff argues the ALJ failed to properly consider her subjective reports. In analyzing a claimant's subjective reports, the ALJ considers the entire record, including: medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529, 416.929; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and substantial evidence. Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018). See also Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

Here, the ALJ provided several valid and well-supported reasons for discounting Plaintiff's subjective reports. The ALJ first found that the medical evidence and other evidence of record showed Plaintiff's physical complaints predated the alleged onset date of disability by over a year and did not significantly worsen on or following that date. (Tr. 59-61). Treatment records predating July 27, 2016 included reports of back pain, mild findings on examination, and relatively conservative treatment. (Tr. 413, 419, 721-22, 726, 729). She generally presented to emergent care visits with a steady gait, full range of motion, and comfortable appearance. (Tr. 405-06, 416, 423-24). Lumbar pain was noted on palpitation of L2-L5 on April 30, 2015 (Tr. 729-30); however, this pain had decreased in severity on subsequent visits and Plaintiff reported no pain on June 11, 2015 (Tr. 721).

Progress notes from Ms. Jibben from June 2015 through April 2018 reflect complaints of chronic back pain (Tr. 616-35, 689-730), but multiple imaging studies were described as "rather benign" (Tr. 624), and demonstrated that Plaintiff's degenerative disc disease and lumbar osteoarthritis were present prior to the onset date of disability and did not significantly worsen on or following that date (Tr. 60). Ms. Jibben's notes include findings of mild osteoarthritic changes and moderate facet arthropathy, but no disc space narrowing (Tr. 418, 421, 620, 698, 700, 702, 725). Similarly, physical examinations, including those conducted by Ms. Jibben, reflected consistently mild findings prior to and during the relevant period, such as intact sensation, intact motor function, normal reflexes, negative straight leg raising; abnormalities were largely limited to tenderness. (Tr. 60, 616, 618, 624, 626, 628, 631-321, 648-49, 685-96, 707). These inconsistencies detract from Plaintiff's credibility. See Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003) (ALJ may discount subjective complaints that conflict with medical records).

8

The ALJ also found Ms. Jibben's treatment for Plaintiff's symptoms, namely prescription narcotic pain medication, arguably out of proportion to the documented clinical findings and relatively mild examination results. (Tr. 60). The ALJ noted that none of Plaintiff's examining or treating sources had referred her to a neurosurgeon or recommended surgery to address her back impairments (id.), which contradicts her subjective allegations of disabling limitations. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (ALJ may consider record of conservative treatment in evaluating credibility).

As for Plaintiff's mental impairments, the ALJ likewise noted that Plaintiff's reported symptoms during the relevant period, i.e., depression, anxiety, mood swings and impulsivity, were very similar to those reported for several years prior to the alleged onset date of disability and, like her physical complaints, did not worsen on or around that date. (Tr. 61). The ALJ found it notable that records from Plaintiff's treating physician, Naveed J. Mirza, M.D., dating from April 2013 to April 2018, document nearly identical mental status examinations, including an anxious affect, negative attitude, circumstantial quality of thought, and fair judgment, regardless of Plaintiff's subjective reports. (Tr. 61, 427-478, 479-484, 485-491, 656-688, 738-745). Mental status examinations and observations from other medical sources lacked significant findings and documented normal affect and cooperative attitude. (Tr. 403, 405-06, 413, 416, 424). Treatment records from Ms. Jibben indicate that Plaintiff was often emotional during appointments, but also generally alert, oriented, and well groomed. (Tr. 618, 620, 622, 626, 628, 631).

The ALJ also noted that despite the alleged severity of Plaintiff's mental health symptoms, the record lacked evidence of emergent or inpatient care treatment, which was consistent with Ms. Jibben's April 6, 2018 mental medical source statement, in which she assessed no greater than moderate limitation in any area of Plaintiff's mental functioning. (Tr. 61, 731-32). Again,

conservative treatment contradicts subjective allegations of disabling limitations. Gowell, 242 F.3d at 796. This lack of objective support detracts from Plaintiff's claims of disabling limitations. See Edwards, 314 F.3d at 966. Thus, the Court finds the ALJ properly found the objective medical evidence was not fully consistent with Plaintiff's subjective allegations.

As for the medical opinion evidence, the ALJ considered Ms. Jibben's mental medical source statement completed on April 6, 2018. (Tr. 731-32). Ms. Jibben indicated that Plaintiff experienced side effects from medication that included drowsiness and opined that as a result of her condition, Plaintiff would miss approximately four days of work per month and be off-task at least 25 percent of the time. (Tr. 731). Ms. Jibben further opined that Plaintiff was mildly or moderately limited in all listed areas of work-related mental function, including moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to respond appropriately to changes in the work setting. (Tr. 731-32).

The ALJ gave "some" weight to Ms. Jibben's assessment of Plaintiff's mental abilities and limitations, finding her opinion that Plaintiff experiences "no more than moderate limitation in any area of mental functioning is generally consistent with the medical evidence, which shows stable

symptoms and mental status examinations for years prior to the alleged onset date of disability, as well as during the relevant period." (Tr. 62-63).

The ALJ also considered the November 1, 2016 mental RFC assessment of non-examining State agency psychological consultant Kirk Boyenga, Ph.D. (Tr. 136-159). Dr. Boyenga assessed Plaintiff with moderate limitations in understanding and carrying out short and simple instructions and detailed instructions; maintaining attention and concentration; completing a normal workday; interacting with the public; setting goals; and making plans independently of others. (Tr.143, 155-56). The ALJ gave "significant weight" to Dr. Boyenga's assessment that Plaintiff has no more than moderate impairment in any area, since this opinion "is consistent with the relatively limited mental status examination findings and the lack of any inpatient or emergent mental health treatment," but found no more than mild limitation in Plaintiff's ability to understand and remember simple instructions for the same reasons. (Tr. 62).

Ms. Jibben also completed a physical medical source statement on April 6, 2018. (Tr. 735-37). She opined that Plaintiff was exertionally limited to less than a full sedentary range of work activity, would need to take unscheduled breaks, would be off-task 25 percent of the time, was incapable of even "low stress" work, and would miss more than four days of work per month. (Tr. 735-37). The ALJ gave little weight to Ms. Jibben's assessment of Plaintiff's physical limitations, noting that while she is a treating source, she is not considered an acceptable medical source for purposes of rendering a medical opinion. (Tr. 62). See 20 C.F.R. §§ 404.1502(a), 416.902(a). The ALJ also found the objective medical evidence and other evidence of record did not provide a basis for Ms. Jibben's suggested exertional restrictions, sitting/standing limitations, time off-task, missed days, additional breaks, or lack of capacity for low stress work, as they were inconsistent

11

with generally mild physical examination findings throughout the record, both prior to and following the alleged onset date of disability. (Tr. 62).[1]

The ALJ also gave "some" weight to the November 14, 2016 assessment of non-examining State agency medical consultant Susan Rosamond, M.D., who concluded that Plaintiff retained the ability to perform light to medium work, including occasionally lifting and/or carrying twenty-five pounds and frequently lifting and/or carrying twenty pounds. (Tr. 62, 141-42, 153-54). The ALJ found that the evidence supported additional postural and environmental restrictions, but that given the relatively limited findings on imaging studies and physical examinations, and Plaintiff's conservative treatment, the evidence supported her ability to stand, walk, and sit for six hours in an eight-hour workday (Tr. 62). The ALJ did, however, view the evidence in the light most favorable to Plaintiff by limiting her to a maximum of twenty pounds lifting and/or carrying. (Id.).

Because the ALJ has provided several valid and well-supported reasons for discounting Plaintiff's allegations, the Court finds no error here. Plaintiff argues these reasons were based on a selective reading of the evidence (Tr. 15 at 1); however, the Court notes that the ALJ's observations are supported by the record, and that when an ALJ has identified multiple valid reasons for discounting a claimant's credibility, the ALJ is not "cherry-picking" from the record, but rather is making a well-supported credibility determination. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (holding a credibility determination based on multiple valid reasons is entitled to deference); see also Roberts v. Berryhill, No. 4:16-CV-1604-SNLJ, 2018 WL 1420241, at *6 (E.D. Mo. Mar. 22, 2018).

### B. The ALJ did not err in failing to include all of Plaintiff's limitations in the RFC assessment or in failing to explain her reasons for not doing so.

---

[1] Plaintiff does not take issue with the weight given to Ms. Jibben's opinions concerning her physical limitations.

12

Plaintiff contends that remand is required because the ALJ agreed with the moderate mental limitations in Ms. Jibben's opinion, yet omitted some of them from the RFC assessment without explanation. In particular, the ALJ failed to include any limitations regarding Plaintiff's ability to be punctual, perform within a schedule, maintain regular attendance, complete a normal workday, accept instructions, and respond appropriately to criticism from supervisors. (Doc. No. 11 at 4-5).

The Commissioner responds that the ALJ properly included only those work-related limitations she found supported by the record evidence, and adequately accounted for those limitations by limiting Plaintiff to simple, routine, repetitive tasks involving only simple, work-related decisions; few, if any, workplace changes; no work with an assembly line or conveyer belt; and no more than occasional interaction with coworkers and the public. (Doc. No. 14 at 9-10). The Commissioner also notes that Ms. Jibben is not an acceptable medical source. (Id. at 10).

As a threshold matter, although some medical evidence must support an RFC, see Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008), it is not the only evidence an ALJ considers. As discussed above, an ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)); see also Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012). The ALJ has more discretion when evaluating an opinion from an "other" medical source such as Ms. Jibben than when evaluating an opinion from an acceptable medical source, and may discount that opinion if it is inconsistent with the record evidence. Raney v. Barnhart, 396 F.3d 1007, 1009 (8th Cir. 2005). Here, the ALJ properly evaluated and weighed Ms. Jibben's opinions as part of her consideration of the entire record.

13

Further, there is no requirement that an RFC finding be supported by a specific medical opinion. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016); see also Myers v. Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013); Beatty v. Saul, No. 2:18 CV 22 ACL, 2019 WL 4243087, at *9 (E.D. Mo. Sept. 6, 2019). The ALJ is under no obligation to adopt all the limitations of any one medical source. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). 2005); 20 C.F.R. §§ 404.1513(a) & (d)(1); SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Thus, just because the ALJ gave Ms. Jibben's opinions "some weight," does not necessarily mean she was required to include all limitations asserted in her opinion. McGee v. Colvin, No. 14-04035-CV-C-DGK, 2015 WL 58484, at *4-5 (W.D. Mo. Jan. 5, 2015).

Nor did the ALJ err in failing to explain precisely why she excluded certain limitations. An ALJ is not required to refute every alleged limitation. See McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation."). Here, it is clear from the ALJ's five-page review and analysis of the record evidence that she considered all of Plaintiff's limitations but only included those limitations she found credible, as discussed in detail above. (Tr. at 58-63).

Because the hypothetical question posed to the VE included those impairments the ALJ found substantially supported by the record as a whole and excluded those she properly disregarded, the VE's testimony that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination. See Gieseke v. Colvin, 770 F.3d 1186, 1189 (8th Cir. 2014); Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011); Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

### V.     Conclusion

The ALJ properly evaluated Plaintiff's subjective reports and included all of her credible limitations in the RFC determination. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of December, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

15